**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CHARLES FILLORAMO,<br>  Plaintiff, | :<br>:<br>: |
| v. | :<br>: |
| NEWALLIANCE INVESTMENTS,<br>INC.,<br>  Defendant. | :   Civil No. 3:06CV01825(AVC)<br>:<br>: |

### RULING ON THE DEFENDANT'S MOTIONS TO COMPEL ARBITRATION AND TO DISMISS, AND THE PLAINTIFF'S MOTION TO STRIKE

This is an action for damages. It is brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.[1] The plaintiff, Charles Filloramo, alleges that his former employer, the defendant, NewAlliance Investments, Inc. ("NewAlliance"), discriminated against him because he is disabled.

NewAlliance now moves for an order compelling Filloramo to submit to arbitration, and further, for dismissal of this action without prejudice, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Filloramo has moved to strike several exhibits submitted in support of NewAlliance's motions.

The issues presented are: 1) whether the exhibits submitted

---

[1] The ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). "[T]he term 'discriminate' includes . . .not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b).

by NewAlliance constitute properly authenticated, relevant evidence; and 2) whether there is a genuine issue of fact as to whether Filloramo entered an agreement to arbitrate disputes with NewAlliance.

For the reasons set forth hereinafter, the motion to strike is DENIED (document no. 16), and the motions to compel arbitration and to dismiss without prejudice (document no. 9) are GRANTED.

**FACTS:**

Unless otherwise indicated, an examination of the complaint discloses the following allegations.

The plaintiff, Charles Filloramo, suffers from macular degeneration, a progressive eye decease that causes a loss of vision.

On November 1, 2001, Filloramo began his employment with the Savings Bank of Manchester, as a "senior financial consultant." The bank subsequently merged with two other banks to form NewAlliance, the defendant.

On April 8, 2004, Filloramo made a number of requests of NewAlliance to accommodate his disability. The accommodations provided by NewAlliance did not satisfy Filloramo.

Following this request for accommodations, NewAlliance issued multiple formal disciplinary warnings regarding Filloramo's productivity, and otherwise documented his

2

performance as being inadequate.  Further, NewAlliance provided poor service to Filloramo's clients, reassigned some of his clients to other employees, and limited his opportunities to garner new clients.  Additionally, Filloramo's supervisor was hostile, used Filloramo's poorly ventilated office as a storage space for files and office equipment, and frequently interrupted Filloramo's work.

On February 17, 2005, NewAlliance terminated Filloramo.  On November 14, 2006, Filloramo filed the complaint in this action.

In support of its motion to compel arbitration, NewAlliance has submitted a series of documents, each titled Form U-4, Uniform Application for Securities Industry Registration or Transfer ("U-4 applications").  These documents are Filloramo's applications to be a licensed representative with the National Association of Security Dealers ("NASD").  One such form is dated January 5, 2005, and is signed by Filloramo.  On that form, listed on under the caption "firm name" is NewAlliance Investiments, Inc.

Each U-4 application contains the following provision: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] . . . ."  The NASD Code of Arbitration Procedure requires "the arbitration of any dispute, claim, or

3

controversy arising out of or in connection with the business of any member of the [NASD], or arising out of . . . employment or termination of employment . . . ."

### **STANDARD:**

"The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (quoting Deloitte Noraudit A/S v. Deloitte Haskins & Sells, United States, 9 F.3d 1060, 1063 (2d Cir. 1993)). Section 4 of the FAA specifically provides that a party may obtain an order "directing that [an] arbitration proceed in the manner provided for in [an arbitration] agreement." 9 U.S.C. § 4. Where a motion is brought to compel arbitration, a court "applies a standard similar to that applicable for a motion for summary judgment" in that it must determine whether there is "an issue of fact as to the making of the agreement for arbitration." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether the record presents genuine issues of fact, the court

must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).

## **DISCUSSION:**

**I. Motion to Strike**

Filloramo moves to strike the exhibits submitted by NewAlliance in support of its motion to compel arbitration. Specifically, he seeks to exclude a document memorializing Filloramo's registration history with the NASD, as well as Filloramo's actual U-4 applications for registration. Filloramo argues that these documents should be stricken as they are irrelevant, and unauthenticated. Further, he contends that some of them do not contain his signature.

NewAlliance has responded by providing the sworn affidavit of one Karen Hajus, NewAlliance chief compliance officer. Hajus attests that the exhibits submitted by NewAlliance are true and accurate copies of Filloramo's U-4 applications. Further, NewAlliance notes that the text of these applications explicitly states that an applicant can sign the document either by affixing "a manual signature," or in the case of an electronic application, by "typing a name in the designated signature field . . . ." Moreover, NewAlliance points out that the U-4 application dated January 5, 2005, contains both Filloramo's manual signature and his name typed in the signature field, and

lists NewAlliance as his firm.

The motion to strike is denied.  A signed application for NASD registration that contains a clause requiring the arbitration of disputes with the applicant's firm is relevant to the central question in this case, namely, whether Filloramo agreed to arbitrate his dispute with NewAlliance.  While the exhibits initially may have been inadmissible because they were unauthenticated, Hajus's affidavit has remedied this defect.

**II.  Motion to Compel Arbitration**

NewAlliance moves for an order to compel Filloramo to arbitrate his claims.  Specifically, NewAlliance argues that Filloramo "repeatedly, knowingly agreed to arbitrate all claims with NewAlliance, . . . [that this] agreement extends to [the] plaintiff's claims in this action, . . . [and that] the law is clear that [such] claims are arbitrable."

Filloramo responds that he "cannot be required to submit this claim to arbitration because he never agreed to compulsory arbitration."  Specifically, he contends that he "never signed an employment agreement with his employer," and as such, the court must deny the motion to compel.

"Arbitration is strictly a matter of contract." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995) (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  "As such,

ordinary principles of contract law apply, and [the Second Circuit] ha[s] recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement," Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir. 2007), including third party beneficiaries, Kidder, Peabody & Co. v. Zinsmeyer Trusts Partnership, 41 F.3d 861, 864 (2d Cir. 1994); see Coldwell Banker Manning Realty, Inc. v. Computer Scis. Corp., CV030825180, 2005 Conn. Super. LEXIS 1510, at *6 (June 9, 2005); cf. Gaudet v. Safeco Ins. Co., 219 Conn. 391, 397 (1991) ("There is . . . little reason to distinguish between a third party beneficiary's right to enforce an arbitration clause of a contract and a third party beneficiary's right to enforce any other clause of a contract.").

"The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary . . . ." Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325 (1963). "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." Barnard v. Barnard, 214 Conn. 99, 110 (1990). "Where the language of the contract is clear and unambiguous, the contract is to be given

effect according to its terms." Montoya v. Montoya, 280 Conn. 605, 612 (2006). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact, where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Id. (citations omitted).

With respect specifically to agreements to arbitrate, courts conduct a four-pronged analysis to determine whether such an agreement controls:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 168 (2d Cir. 2004) (citations omitted).

Fillomora opposes the motion to compel arbitration solely on the basis of the first prong of this analysis, arguing that he never entered an agreement with NewAlliance that would require compulsory arbitration.[2] This argument is unavailing. The absence of an agreement with NewAlliance is immaterial. Rather,

---

[2] For the purpose of this motion, the court presumes that NewAlliance can satisfy the remaining three prongs of this analysis, as Filloramo does not argue otherwise.

what is at issue here is whether Fillomora entered an agreement with the NASD requiring that he arbitrate disputes with NewAlliance. The undisputed evidence indicates that he did enter such an agreement.

On January 5, 2005, Fillomora signed his U-4 application for NASD registration. The document explicitly names NewAlliance as Filloramo's firm. Further, it states that Filloramo "agree[s] to arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm . . . ."

In response to this unambiguous language evincing his intent to be bound, Fillomora has submitted no documents nor affidavits that would undermine a finding that he agreed with the NASD to arbitrate disputes with NewAlliance. In fact, he has submitted no evidence of any kind. As such, the court concludes that there is no genuine issue of material fact as to whether Filloramo agreed to compulsory arbitration. See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)(holding that under the summary judgment standard the "non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful").

This conclusion is bolstered by the numerous instances in which courts have construed the execution of the very form signed by Filloramo in this case, Form U-4, as powerful evidence of an

9

agreement to submit to arbitration. See <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 25 (1991); <u>Perry v. Thomas</u>, 482 U.S. 483, 485 (1987); <u>Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran</u>, 445 F.3d 121, 123 (2d Cir. 2006); <u>Thomas James Assocs. v. Jameson</u>, 102 F.3d 60, 62 (2d Cir. 1996).

As a third-party beneficiary to Filloramo's agreement with the NASD, NewAlliance is entitled to enforce the arbitration provisions of that agreement.[3] Therefore, the motion to compel arbitration is granted. The parties are ordered to submit to arbitration in accordance with the terms set forth in, and incorporated by the U-4 application signed by Filloramo, and dated January 5, 2005.

**III. Motion to Dismiss Without Prejudice**

While arbitration is pending, rather than have the court stay this matter, NewAlliance moves to dismiss the action without prejudice. Filloramo has not responded to this motion.

The FAA provides for the staying of actions, while the parties submit to arbitration. 9 U.S.C. § 3. Nevertheless, "[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather

---

[3] NewAlliance also argues that it is a party to a distinct agreement with Filloramo to arbitrate disputes. As the court rules on the motion to compel arbitration on other grounds, the court does not take up this issue.

10

than stay proceedings." Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)). As there is no dispute that all the issues raised by the complaint fall within the scope of the arbitration agreement, the motion is granted. Accordingly, this action is dismissed without prejudice to its refiling after the parties have satisfied their obligations to arbitrate their dispute.

### **CONCLUSION:**

For the foregoing reasons, the motion to strike (document no. 16) is DENIED, and the motions to compel arbitration and to dismiss without prejudice (document no. 9) are GRANTED.

It is so ordered this 23rd day of April, 2007, at Hartford, Connecticut.

```
      _____/s/_____
      Alfred V. Covello
      United States District Judge
```